J-S13027-19

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| J.A.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | No. 1652 WDA 2018 |
| M.J.C. | | |
| | | |
| Appellant | | |

Appeal from the Order Entered October 25, 2018
in the Court of Common Pleas of Erie County
Civil Division at No(s): No. 12211-2017

BEFORE:    BENDER, P.J.E., OTT, J., and STRASSBURGER, J.*

CONCURRING AND DISSENTING MEMORANDUM BY STRASSBURGER, J.:

FILED MAY 8, 2019

For the reasons that follow, I concur with the Majority insomuch as it remands the case to the trial court to analyze the custody factors set forth at 23 Pa.C.S. § 5328(a).  I dissent from the Majority's memorandum insomuch as it directs to the trial court to receive expert testimony on remand as to the issue of what information to communicate to M.C. regarding Father's behavior towards M.C.'s half-sister R.K.

As recounted by the learned Majority, in this case, the trial court changed Father's custody from unsupervised partial physical custody to supervised partial physical custody without analyzing the subsection 5328(a) custody factors.  Not only does the Custody Act require trial courts to consider all relevant factors when awarding "any form of custody," 23

*Retired Senior Judge assigned to the Superior Court.

Pa.C.S. § 5328(a), it also explicitly directs the trial court to consider the subsection 5328(a) factors before awarding "supervised physical custody." 23 Pa.C.S. § 5323(a)(5); see also A.V. v. S.T., 87 A.3d 818, 819 (Pa. Super. 2014) (holding the trial court erred by omitting application of the subsection 5328(a) custody factors when making a new award of custody); S.W.D. v. S.A.R., 96 A.3d 396, 403 (Pa. Super. 2014) ("[W]hen read as a whole, it is apparent that the § 5328(a) factors were designed to guide the best-interest analysis when a trial court is ordering which party has the right to a form of custody.") (emphasis in original).  Therefore, the Majority correctly follows the law in concluding that the trial court erred by failing to consider the subsection 5328(a) factors before changing Father's partial physical custody from unsupervised to supervised.  I believe it is unnecessary to re-invent the wheel and go through every factor every time the trial court tweaks the parties' custody arrangement, but alas, this is what the statute and our caselaw requires.  Therefore, I join the Majority in remanding this case to the trial court for examination of the subsection 5328(a) custody factors.

I dissent, however, to the extent the Majority directs the trial court to receive expert testimony on the issue of whether it would be in M.C.'s best interest to prohibit Mother from informing her of Father's statements to R.K. The trial court ordered Mother to "not relay, or cause to have relayed, any information to [M.C.] regarding the facts and circumstances of Father's

inappropriate communications with [M.C.'s] half-sister [R.K.], absent Father's consent or further order of court." Order, 10/25/2018, at 3. In its opinion, the trial court justified its decision as being necessary to protect M.C. from "irresponsible communications" and "careless speech, however well-intended." Trial Court Opinion, 12/18/2018, at 18. The trial court also believed Father should be involved in the decision, and noted that M.C.'s sister K.C. "is now in counseling to address problems created by hearing of Father's statements to R.K. from Mother," and her relationship with Father is "severely strained, if not broken." Id.

The Majority determines that the trial court abused its discretion by prohibiting Mother from telling M.C. about Father's conduct without "a more developed record, including the presentation of expert testimony." Majority at 19. To the extent that the Majority holds that the trial court could not make a ruling on this issue without expert testimony, I disagree. Although it is tempting to have an expert provide guidance on every custody issue, in my opinion, experts are overused. Their overuse drives up the cost of custody litigation and protracts the proceedings unnecessarily. In this situation, there is really no way to know how M.C. in particular will react without letting the proverbial cat out of the bag. While an expert could opine about how children react in general upon learning negative information about a parent's behavior, and that general opinion may be helpful to making a decision in this case, I do not believe that expert testimony is

- 3 -

required on this issue. In my view, while the trial court would be within its discretion to consider an expert's testimony, this Court should not mandate that the parties present expert testimony. Just because an issue is emotionally complicated and difficult to make does not mean that it is outside of the realm of a lay person's capabilities.

Obviously there are pros and cons to telling M.C. about Father's conduct. Family secrets have a way of outing themselves, and children often pick up on adult tensions more than adults realize. It is not wise to lie to children or to leave them in the dark when the not knowing can cause anxiety just as detrimental as the revealing of the secret. It also may be prudent to tell M.C. information at an age-appropriate level in a controlled manner before she hears the information from someone else in an insensitive fashion. Conversely, M.C. is younger than her siblings, and she may not yet have the emotional maturity to process the information. Since she recently experienced a major upheaval when her parents separated, learning about what he did if she is not questioning things may not be wise until later on down the road. She also can receive some counseling about how to protect herself from childhood abuse without implicating Father specifically. It is likely because of competing considerations such as these that caused the mental health professionals with whom Mother consulted to have differing opinions as to whether telling M.C. was advisable.

Ordinarily, I would deem it to be within the trial court's discretion to weigh these competing considerations and make a ruling on this issue. However, in this case, I believe the trial court has abused its discretion. During the hearing, immediately following Father's cross-examination of Mother regarding her decision to tell K.C. about Father's conduct towards R.K., the trial court made the following statements to Mother:

> THE COURT: So the consequences of [Father's] actions, if I understand you correctly, he - it is essentially a life sentence for him that because of some past behaviors, none of which were directed at the two natural daughters you have with him, he'll never - if I understand you correctly, he'll never have a normal relationship with - I mean, [K.C.] is probably shot because of you. [M.C.] still has a chance, but it sounds like you're willing to torpedo that if and when things maybe don't go the way you think they should.
>
> [MOTHER]: No, I have not told her - I have not told [M.C.], because I don't want to tell her. And I didn't -
>
> THE COURT: I don't think you should.
>
> [MOTHER]: I did not destroy his relationship with [K.C.]. And the second that this happened, the relationship was changed forever regardless of who knew what. Things - things -
>
> THE COURT: We'll never know that because you told [K.C.]. We'll never know what that relationship could have been because you told her.
>
> [MOTHER]: I don't think I'm the one that destroyed it. I think he destroyed it with what he did.
>
> THE COURT: She had no idea what he did until you told her.
>
> [MOTHER]: She knew something was up.
>
> THE COURT: She had no idea of the specifics of what happened until you told her, correct?

- 5 -

[MOTHER]: Yes. And she only knows that he told [R.K.] that he had a crush on her. She doesn't know he told her he wanted to date her; that he told her that we hadn't had sex for so many months. She doesn't know all of the other details that he told her. She doesn't know that he was addicted to pornography. She doesn't know about him exposing himself.

N.T., 10/22/2018, at 59-61 (emphasis added).

The trial court's comments to Mother are unduly harsh and blame the messenger. K.C. is upset with Father because of what he did. That being said, it is fair to consider whether Mother was and will be prudent in her communications with K.C. and M.C., and whether she has her children's best interests in mind. However, despite the tenor of the trial court's on-the-record rebuke of Mother, there is no indication in the record that Mother was trying to "torpedo" M.C.'s relationship with Father. As the trial court acknowledged, Mother testified that she would only inform M.C. of Father's behavior "with the assistance of or upon the advice of the child's counselor." Trial Court Opinion, 12/18/2018, at 18. Mother testified that she did not want to tell M.C., and would only do so if it became necessary for M.C.'s wellbeing. N.T., 10/22/2018, at 48, 60. Furthermore, the trial court's reference to "careless speech" is unwarranted. There is no indication in the record that Mother told K.C. on a whim or without careful consideration; instead, Mother had testified that she only told K.C. after seeking guidance from others on whether it would help address the anger and confusion K.C. was experiencing about the parties' separation and Father's supervised

visits. N.T., 4/25/2018, at 20-21; N.T., 10/22/2018, at 54-55. Mother also provided K.C. with limited information and omitted details that were too mature for her to process. N.T., 10/22/2018, at 67.

Moreover, it appears that Father did not request the trial court to prohibit Mother's disclosure to M.C.; instead, this was a restriction raised sua sponte by the trial court after the parties touched upon the subject as part of their questioning regarding the larger issue of supervised visits. I do not think it was necessary for the trial court to invade sua sponte the parties' parental discretion on what information to communicate to their children. To me, it appears from the trial court's statements that the trial court imposed its own personal opinion as to what was in a child's best interest without examining M.C.'s circumstances specifically. There are multiple ways to handle an issue of this sensitivity, and it appears as if the trial court based its decision upon its disagreement with Mother's method.

If the trial court did believe a ruling was necessary to protect M.C., before making such a ruling, it would have been prudent for the trial court to hear directly from M.C.'s parents or her counselor about M.C.'s maturity level, how M.C. has been processing her parents' separation, whether M.C. is questioning why her sister K.C. no longer has visits with Father or why M.C.'s visits are supervised, and whether M.C. picks up on the tension in the family. Additionally, the trial court could have made its ruling more narrow in scope, such as by advising Mother that it was placing the restriction in

effect now, but that she could motion the court in the future if M.C.'s counselor believed it was in M.C.'s best interest to provide her with more information. Thus, I do not join the Majority's memorandum insomuch as it requires the trial court to utilize expert testimony on remand, and on remand, I would instead require the trial court to reconsider the issue keeping M.C.'s current and specific best interests in mind.